USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/24/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
RAFAEL RIVERA,

                 Plaintiff,

         -against-

UNITED PARCEL SERVICE and SHELDON ALLEN,

                 Defendants.
-------------------------------------------------------------- X

16-CV-3998 (VEC)

MEMORANDUM OPINION AND ORDER

**VALERIE CAPRONI, United States District Judge:**

       Plaintiff Rafael Rivera sued Defendants United Parcel Service ("UPS") and Sheldon Allen for discrimination, retaliation, hostile work environment, and violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* Am. Compl., Dkt. 32. Defendants have moved to preclude Plaintiff from "relying upon any and all evidence relating in any way" to four witnesses, pursuant to Federal Rule of Civil Procedure 37(c)(1) and this Court's inherent power. Proposed Order, Dkt. 77, Ex. 1; *see also* Notice of Mot., Dkt. 77.

       For the following reasons, Defendants' motion is DENIED. The Court, however, will reopen discovery until June 21, 2018, solely to allow Defendants (a) to depose Mohamed Khan and Ricardo Torrado, and (b) to redepose Plaintiff for not more than three hours to ask questions regarding the facts asserted in Khan's and Torrado's affidavits, *see* Lajewski Decl., Dkt. 79, Ex 16. If Plaintiff agrees not to offer Khan's or Torrado's testimony for any purpose (including impeachment) in a motion for summary judgment, trial, or any other proceeding in this action, the Court will order that all fact discovery remain closed. If Plaintiff chooses to exercise this option, he must notify Defendants and the Court by May 31, 2018.

Additionally, while the Court denies Defendants' motion to prelude evidence relating to Carolyn McIntyre and Hyman Stadlen, the Court will allow Defendants to offer evidence at trial relating to the fact that McIntyre and Stadlen have allegedly discarded records of Plaintiff's treatment. If Defendants adduce sufficient evidence of spoliation, the Court will consider charging the jury that it may draw an adverse inference against Plaintiff.

The parties are directed to appear for a conference on **June 22, 2018 at 10:00 a.m.**, Courtroom 443, Thurgood Marshall U.S. Courthouse. No later than June 14, 2018, the parties must submit a letter stating whether they will require expert discovery and proposing a briefing schedule for a motion for summary judgment.

## BACKGROUND

### I. Plaintiff's Allegations

Plaintiff works for UPS as an account executive. Am. Compl. ¶ 96. Plaintiff alleges that Allen, his supervisor, and other employees at UPS engaged in a pattern of discrimination toward him between April 2014 and February 2016. *Id.* ¶¶ 18–119.[1] Allen allegedly made numerous ageist remarks toward Plaintiff, including telling him that he should consider retiring. *Id.* ¶¶ 5, 19–89. Plaintiff alleges that he complained repeatedly to UPS's Human Resources ("HR") Department and that Defendants unlawfully retaliated against him. *Id.* ¶¶ 28–89.

Defendants' conduct allegedly caused Plaintiff anxiety and panic attacks, which Plaintiff discussed with his therapist, Carolyn McIntyre, and his psychiatrist, Fiona Graham. *Id.* ¶¶ 27, 60–

---

[1] Plaintiff brings claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); and ERISA, 29 U.S.C. § 1132. *See* Am. Compl., ¶¶ 120–192. Plaintiff seeks damages for lost wages, "humiliation, mental and emotional distress," along with punitive damages, statutory damages, attorneys' fees, costs, and interest. *Id.* at 24.

61, 66, 75.  Plaintiff also visited his primary care physician, Hyman Stadlen, who monitored his general health during this time.  *See* Lajewski Decl., Exs. 36, 38.[2]

## II. Discovery Relating to Mohamed Khan and Ricardo Torrado

Discovery began on June 7, 2017.  *See* Case Management Plan, Dkt. 51.  Plaintiff's initial disclosures listed 31 individuals "likely to have discoverable information" about this case.  Lajewski Decl. Ex. 5 at 2.  At around the same time, Defendants served interrogatories on Plaintiff requesting the names of "all persons having knowledge of facts relevant to Plaintiff's allegations . . . including but not limited to the individuals identified" in Plaintiff's initial disclosures.  *Id.* Ex. 8, ¶ 1.  Plaintiff responded to Defendants' interrogatories two weeks later and supplemented those responses throughout the discovery period.  *See id.* Exs. 9–12.

On December 6, 2017, the last day of fact discovery, Plaintiff disclosed two new witness affidavits to Defendants.  *Id.* Ex. 16.  In the affidavits, Mohamed Khan and Ricardo Torrado, two employees at UPS, each stated that he had witnessed Allen "harassing Plaintiff" about his retirement plans "on multiple occasions" beginning "in approximately April" (without stating the year or a more specific timeframe).  *Id.* Ex. 16 at 5, 8.  Plaintiff failed to identify Khan or Torrado as possible witnesses prior to this time, whether in his initial disclosures, interrogatory responses, or any other submission.  When asked by the Court why Plaintiff had not disclosed the witnesses or

---

[2] The Court will refer to the parties' filings with the following abbreviations:  Defendants' Memorandum of Law, filed in support of their motion to preclude, Dkt. 78, as "Defs.' Mem. of Law"; the Declaration of Leslie A. Lajewski, Esq. In Support of Defendants' Motion to Preclude Evidence, Dkt. 79, as "Lajewski Decl."; Plaintiff's Memorandum of Law, filed in opposition to Defendants' motion to preclude, Dkt. 80-1, as "Pl.'s Mem. of Law"; the Declaration of Ty Hyderally, Esq., filed in opposition to Defendants' motion to preclude, Dkt. 80-2, as "Hyderally Decl."; the Declaration of Hyman Stadlen, M.D., filed in opposition to Defendants' motion to preclude, Dkt. 80-3, as "Stadlen Decl."; the Declaration of Rafael Rivera, filed in opposition to Defendants' motion to preclude, Dkt. 80-4, as "Rivera Decl."; Defendants' Reply Memorandum of Law, filed in support of their motion to preclude, Dkt. 81, as "Defs.' Reply Mem. of Law"; the Supplemental Declaration of Leslie A. Lajewski, Esq. In Further Support of Defendants' Motion to Preclude Evidence, Dkt. 82, as "Lajewski Supp. Decl."; and the Declaration of Catherine D. Sabo in Support of Defendants' Motion to Preclude Evidence, Dkt. 83, as "Sabo Decl."

their statements earlier, Plaintiff's counsel said: "I don't have a good answer to that, Your Honor. I don't know why we didn't disclose [them] in our initial interrogatories." *Id.* Ex. 18 at 5.

### III. Discovery Relating to Carolyn McIntyre and Hyman Stadlen

During discovery, Defendants served Plaintiff with a request for medical records relating to Plaintiff's "alleged emotional injuries," along with, more generally, "documents concerning any treatment or counseling" from any medical or mental-health professional "from January 1, 2010 through the present date." *Id.* Ex. 7, ¶¶ 15–17. Plaintiff objected, responding that Defendants could subpoena the records directly from Plaintiff's health care providers. *Id.* Exs. 9–10; Hyderally Decl. Exs. 1–2. Plaintiff provided Defendants with authorizations for his doctors to release his medical records to Defendants, pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *Id.* Ex. 20.

In June 2017, Defendants served third-party subpoenas on McIntyre[3] and Stadlen requesting "all records in [their] possession" relating to Plaintiff's treatment, without a date limitation. Lajewski Decl. Exs. 21–22. In August, McIntyre produced records to Plaintiff, who (after court intervention over redactions) produced them to Defendants. *Id.* Exs. 29–31. After much nagging from Defendants' counsel, Stadlen eventually produced records directly to Defendants. *Id.* ¶¶ 42–44; *id.* Ex. 36. Although McIntyre has been treating Plaintiff since 2012, she produced records only from 2015 through 2017.[4] *Id.* Ex. 31; *id.* Ex. 35 at 13:19–22. Stadlen's production contained records only from 2013 through 2017, even though he has been treating Plaintiff for approximately 20 years. *Id.* Ex. 36; *id.* Ex. 38 at 9:16–18.

---

[3] Defendants' process server encountered substantial difficulty in effecting service on McIntyre. *See* Lajewski Decl. ¶¶ 22–32.

[4] McIntyre's production also contained a few intake forms dated 2012, along with several copies of undated notes. Lajewski Decl. Ex. 31 at McIntyre-1 to McIntyre-5.

Defendants deposed Stadlen and McIntyre. *Id.* Exs. 35, 38. McIntyre testified that she had discarded her 2012 through 2014 notes relating to Plaintiff because she transports her files between her home and office every day, and the notes had become too heavy to carry. *Id.* Ex. 35 at 21:11–24:13. McIntyre was not asked when she discarded Rivera's records. *See id.* During his deposition, Stadlen was asked why he produced only records dated 2013 and later. *Id.* Ex. 38 at 24:17–20. Stadlen testified that it was "possible" that he had records "another year or two or three" before 2013 but that he would need to check his files to be sure. *Id.* Ex. 38 at 24:17–24. Stadlen stated that files prior to that timeframe "would have been discarded." *Id.* Ex. 38 at 24:25–25:25. Stadlen also produced Plaintiff's medication log, which summarized Plaintiff's prescriptions from 2006 forward. *Id.* Ex. 38 at 75:24–76:3; *id.* Ex. 39. Following his deposition, Stadlen produced a few more pages of 2017 records to Defendants but did not produce any earlier records. *Id.* Ex. 41.

Defendants assert that, in November 2017, defense counsel's legal assistant contacted Stadlen to discuss the records production, and Stadlen and his assistant stated that the office retained "only the last six years of medical records" and that "the last destruction" of records had occurred "six months ago" (*i.e.*, around May 2017). Lajewski Decl. ¶ 50; Sabo Decl. ¶ 11–12. Stadlen denies that this conversation took place and asserts that the last time he discarded patient records was "two to three years" prior to February 2018 (*i.e.*, February 2015 to February 2016). Stadlen Decl. ¶¶ 8–9.

## IV. The Instant Motion

On January 19, 2018, Defendants moved to preclude Plaintiff "from relying upon any and all evidence relating in any way to" Khan, Torrado, McIntyre, and Stadlen "on any motion, hearing, trial, or other event relating to this litigation." *See* Notice of Mot., Dkt. 77, Ex. 1.

5

## DISCUSSION

**I.** **Defendants' Motion to Preclude Evidence Relating to Khan and Torrado is Denied**

   **A.** **Plaintiff's Untimely Disclosure Violated the Discovery Rules**

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," a court may preclude that evidence from subsequent proceedings or "may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(A)–(C). "The party seeking Rule 37 sanctions bears the burden of showing that the opposing party failed to timely disclose information." *Markey v. Lapolla Indus., Inc.*, No. 12-CV-4622, 2015 WL 5027522, at *16 (E.D.N.Y. Aug. 25, 2015), *report and recommendation adopted*, 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016).

A party served with interrogatories under Rule 33 has a duty to "compile information within his control" and provide "all information available" in his responses. *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 309 F.R.D. 1, 14 (D.D.C. 2015) (collecting cases); *see also In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 445 (S.D.N.Y. 2000) (in response to interrogatories, a party must respond "not only by providing the information it has, but also the information within its control or otherwise obtainable by it"); Jay E. Greig and Jeffrey S. Kinsler, *Handbook of Fed. Civ. Disc. & Disclosure* § 8:17 (4th ed.) ("A party cannot avoid answering [interrogatories] by alleging ignorance, if the party can obtain the necessary information through reasonable inquiry."). Under Rule 26(e), if a party learns that its response to an interrogatory or other discovery request is "in some material respect . . . incomplete or incorrect," the party must "supplement or correct" its response "in a timely manner," assuming that "the additional or corrective information has not otherwise been made known" during the discovery process. Fed. R. Civ. P. 26(e)(1)(A).

Plaintiff's failure to disclose Khan's and Torrado's identities until the last day of fact discovery violated Rules 26(e) and 33. Khan and Torrado assert in their affidavits that they were in Plaintiff's office when Allen called Plaintiff and asked about his retirement plans, *see* Lajewski Decl. Ex. 16 at 5, 8; Plaintiff, therefore, knew from the commencement of this lawsuit that Khan and Torrado possessed relevant information. Yet Plaintiff failed to identify either person until the last day of fact discovery, despite having previously responded to an interrogatory that requested the names of "all persons having knowledge of facts relevant to Plaintiff's allegations." Lajewski Decl. Ex. 8, ¶ 1. Plaintiff's untimely disclosure of Khan and Torrado is a clear violation of the federal discovery rules.[5]

### B.     The *Patterson* Factors Do Not Weigh in Favor of Preclusion

In *Patterson v. Balsamico*, the Second Circuit identified four factors that courts must consider when deciding whether preclusion is the appropriate remedy for a party's failure to comply with its discovery obligations: (1) the party's explanation for the failure to comply; (2) the importance of the evidence that would be precluded; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. 440 F.3d 104, 117 (2d Cir. 2006).

Applying the first *Patterson* factor, Plaintiff offers no plausible explanation for failing to disclose Khan and Torrado until the last day of fact discovery. Inexplicably, Plaintiff asserts that

---

[5]     Defendants also argue that Plaintiff failed to disclose Khan's and Torrado's identities in Plaintiff's initial disclosures, in violation of Rule 26(a)(1)(A)(i). *See* Defs.' Mem. of Law at 11–13 (citing Lajewski Decl. Ex. 5). Plaintiff asserts that he intends to introduce Khan's and Torrado's testimony "solely for impeachment purposes," to attack Allen's credibility in light of Allen's deposition testimony that he does not recall asking Plaintiff about his retirement plans. *See* Pl.'s Mem. of Law at 7–8. Rule 26(a)(1)(A)(i) contains an exception for evidence that will be used "solely for impeachment," but the courts are divided over the scope of that exception, *see Standley v. Edmonds-Leach*, 783 F.3d 1276, 1282–83 (D.C. Cir. 2015) (collecting cases), and the Court is deeply skeptical that the exception was actually Plaintiff's rationale, given Plaintiff's counsel's initial response when asked why she had waited so long to disclose their identities. *See* Lajewski Decl. Ex. 18 at 5. The Court does not need to decide whether Khan's and Torrado's identities fall within Rule 26(a)(1)(A)(i)'s impeachment exception, however, because Plaintiff's failure to disclose their identities in response to Defendants' interrogatories, standing alone, violated Rules 26(e) and 33. No impeachment exception exists for interrogatory responses. *See id.* at 1282 n.1.

Khan's and Torrado's affidavits are protected by the work-product privilege, *see* Pl.'s Mem. of Law at 12–13, even though it was Plaintiff himself who prepared the affidavits, not Plaintiff's counsel, *see* Rivera Decl. ¶ 6. In any event, even if the affidavits were privileged, Plaintiff was still obligated to disclose the identity of the witnesses during discovery. *See Handbook of Fed. Civ. Disc. & Disclosure* § 1:50 ("Fed. R. Civ. P. 26(b)(3) does not bar discovery of facts a party may have learned from documents that are not themselves discoverable.").[6] Turning to the next *Patterson* factor, while Khan's and Torrado's testimony might be important to Plaintiff's case, its admissibility is questionable. Khan and Torrado each assert that he heard Allen ask Plaintiff about retirement over a speakerphone. *See* Lajewski Decl. Ex. 16 at 5, 8. But Khan and Torrado knew the speaker was Allen only because Plaintiff identified the speaker as Allen to them. Rivera Decl. ¶ 5. Khan's and Torrado's knowledge of Allen's identity, therefore, may be inadmissible hearsay. Even if Plaintiff could surmount the hearsay issue,[7] Khan's and Torrado's testimony would not have much probative value for the purpose for which Plaintiff intends to offer it. Plaintiff asserts that he intends to offer their testimony to impeach Allen's testimony by contradiction, because Allen was unable to recall during his deposition whether he asked Plaintiff about retirement during this time. Pl's Mem. of Law at 8–9. Although Allen was unable to recall specific, individual conversations, he acknowledged that the conversation with Plaintiff "[c]ould have occurred" because he often had discussions with his direct reports about their retirement plans. Hyderally Decl. Ex. 4 at 136:3–14. Thus, Khan's and Torrado's testimony does not squarely contradict Allen's testimony, and its

---

[6] The Court also notes that Plaintiff's excuses come after his attorney was unable to come up with a reason for the failure to disclose at a conference. *See* Lajewski Decl. Ex. 18 at 5. Without any real excuse for what is a clear violation of the rules, Plaintiff's failure to disclose smacks of game-playing rather than a good faith dispute about the scope of his discovery obligations or the work product privilege.

[7] Rivera's statement identifying the speaker as Allen might be admissible pursuant to Fed. R. Evid. 803(1).

8

probative value for impeachment is minimal. It might be important, however, as direct evidence of Plaintiff's claim, as it tends to corroborate Plaintiff's testimony regarding his treatment by Allen.

Under the third *Patterson* factor, Defendants have suffered prejudice from Plaintiff's untimely disclosure because they were unable to ask Plaintiff questions about Khan's and Torrado's expected testimony. *See* Defs.' Mem. of Law at 4. Additionally, Defendants were unable to depose Khan and Torrado about the details of the conversation they assert they overheard. *See id.* Plaintiff argues that Defendants have not suffered prejudice because Khan and Torrado are employed by UPS and Defendants can interview them at any time. Pl.'s Mem. of Law at 10–11. This argument misses the mark. If Khan and Torrado possess relevant information, Defendants are entitled to obtain their testimony under oath, and, possibly, use their deposition testimony in a later motion or trial. An informal, unsworn interview is not an acceptable substitute for the procedures prescribed by the Federal Rules.[8]

While the first three *Patterson* factors weigh in favor of preclusion, the fourth does not. The Court is mindful that preclusion is "a drastic remedy" and is generally disfavored. *Kunstler v. City of New York*, 242 F.R.D. 261, 265 (S.D.N.Y. 2007). "'Before [granting] the extreme sanction of preclusion,' the Court 'should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses.'" *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) (quoting *Outley v. New York,* 837 F.2d 587, 591 (2d Cir. 1988)). Here, reopening discovery would remedy the prejudice that Defendants have suffered, without incurring excessive additional costs. While fact discovery has

---

[8] In light of Plaintiff's clear violation of the discovery rules, the Court admonishes Plaintiff for refusing to reopen depositions or to otherwise allow Defendants to take remedial action. Had Plaintiff simply acknowledged his mistake, he could have saved the parties the burden of this motion and of reopening discovery. This Court could impose considerably harsher sanctions on Plaintiff and, possibly, his attorneys for this gamesmanship. While the Court will not do so, Plaintiff and his counsel are warned that future similar conduct will not be treated so leniently.

closed, no summary judgment schedule has been ordered, and no trial date has been set, allowing fact discovery to proceed in a timely fashion.

Accordingly, the Court will reopen discovery until June 21, 2018, solely to allow Defendants (a) to depose Mohamed Khan and Ricardo Torrado, and (b) to redepose Plaintiff for not more than three hours, limited to questions regarding the facts asserted in Khan's and Torrado's affidavits. If Plaintiff agrees not to offer Khan's or Torrado's testimony for any purpose (including impeachment) in a motion for summary judgment, trial, or any other proceeding in this action, the Court will order that all fact discovery remain closed.[9] If Plaintiff chooses to exercise this option, he must so notify the Court by May 31, 2018. Additionally, although the Court has chosen not to impose preclusion in this instance, Plaintiff is warned that the Court will not tolerate similar violations of the rules as this case proceeds.

## II. Defendants' Motion to Preclude Evidence Relating to McIntyre and Stadlen is Denied

### A. The Applicable Law

A party seeking sanctions for alleged spoliation has the burden of establishing spoliation. The elements of spoliation are: (1) "the party having control over the evidence . . . had an obligation to preserve it at the time it was destroyed"; (2) the evidence was "destroyed with a culpable state of mind"; and (3) the destroyed evidence was "relevant" to the party's claim or defense. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107–09 (2d Cir. 2001) (omission in original).

---

[9] Defendants' motion seeks to preclude Plaintiff from "relying . . . in any way" on evidence "relating to" Khan's and Torrado's testimony. Proposed Order, Dkt. 77, Ex. 1. Defendants offer no explanation whether such a broad remedy would be available under the Federal Rules. Plaintiff's agreement not to introduce their testimony would rectify any prejudice to Defendants, regardless of whether Plaintiff "rel[ied]" upon this testimony in some indirect way.

B.    **Application to the Instant Motion**

1.    **The Time that a Duty to Preserve Could Have Arisen**

"The obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001).

Assuming, without deciding, that Plaintiff had an obligation to preserve his medical records, the Court finds that the obligation arose no earlier than April 2015.[10] At that time, Plaintiff filed an internal complaint with UPS's HR Department stating that he was "seeking to pursue" damages for "the pain [and] suffering" caused by Allen's actions. Lajewski Decl. Ex. 42 at 5. When Plaintiff filed that complaint, he was reasonably on notice that he might commence litigation to recover for emotional damages and, therefore, that his medical records might be relevant to measuring those damages. That notice is, therefore, sufficient to impose a duty to preserve those records, assuming that such a duty exists as a matter of law.

Defendants argue that Plaintiff's duty arose a year earlier, in April 2014, when Plaintiff began speaking with McIntyre about the emotional distress that Allen's alleged harassment was causing him. Defs.' Mem. of Law at 19. The Court disagrees. Defendants offer no evidence to suggest that Plaintiff discussed the prospect of litigation with McIntyre; rather, the record shows that Plaintiff contacted McIntyre merely because he was upset and was facing difficulties in his

---

[10]   The courts are divided over whether patients have functional or legal "control" over their medical records and, accordingly, whether patients have an obligation to preserve those records under the discovery rules. *See Cameron v. Supermedia, LLC*, No. 15-CV-315, 2016 WL 1572952, at *6 (N.D. Fla. Apr. 19, 2016) ("The law governing discovery of a plaintiff's medical records for purposes of emotional distress damages . . . is, frankly, all over the map."); *Klugel v. Clough*, 252 F.R.D. 53, 55 (D.D.C. 2008) (collecting cases); *Clark v. Vega Wholesale Inc.*, 181 F.R.D. 470, 472 (D. Nev. 1998) (collecting cases). *Compare Moody v. Honda of Am. Mfg., Inc.*, No. 2:05-CV-880, 2006 WL 1785464, at *5 (S.D. Ohio June 26, 2006), *report and recommendation adopted*, 2007 WL 1101246 (S.D. Ohio Apr. 11, 2007) (a party's medical records are within his control and therefore "should be treated just like any other document which is requested" under the rules of discovery) with *Clark*, 181 F.R.D. at 472 (Plaintiff's medical records were not discoverable directly from Plaintiff because "[t]he relationship between the Plaintiff and her doctor is not sufficient to establish control"). The Court need not resolve this question because Defendants' motion fails on other grounds.

workplace. *See id.* (citing Am. Compl. ¶¶ 24, 27). The Court will not impose a duty to preserve based on a person complaining to a therapist about his supervisor.

Alternatively, Defendants argue that Plaintiff's obligation arose in February 2015, when he filed an HR complaint "requesting permission to engage [an attorney], consultant, [and] NYS labor rep." *Id.* (quoting Lajewski Decl. Ex. 42 at 4). This argument also fails. While Plaintiff may have been on notice at this time about the possibility of litigation generally, there is no indication that he was on notice that his medical records would be relevant to that litigation.[11]

### 2. The Time that McIntyre and Stadlen Discarded the At-Issue Records

"In order for an adverse inference to arise from the destruction of evidence, the party having control over the evidence must have had an obligation to preserve it *at the time it was destroyed*." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (emphasis added).

Defendants have not shown that McIntyre or Stadlen discarded the at-issue records after April 2015, when any obligation to preserve those records could have arisen. While Defendants elicited from McIntyre in her deposition that she discarded her notes of Plaintiff's 2012 and 2013 sessions, Defendants failed to elicit any information about *when* she discarded these notes. *See* Lajewski Decl. Ex. 35 at 21:11–24:13. And Defendants offer no other evidence to suggest that McIntyre discarded her notes after April 2015. Turning to Stadlen, Defendants offer a declaration

---

[11] Alternatively, Defendants argue that a New York State regulation requiring doctors and therapists to retain patient records for at least six years imposed an obligation on McIntyre and Stadlen to preserve Plaintiff's records for purposes of this litigation. *See* Defs.' Mem. of Law at 21 (citing N.Y. State Rules of the Board of Regents § 29.2(a)(3)). This argument fails. Under Second Circuit law, "a regulation can create the requisite obligation to retain records" only if the party moving for spoliation sanctions is "a member of the general class of persons that the regulatory agency sought to protect in promulgating the rule." *Byrnie*, 243 F.3d at 109; *see also, e.g.*, *Babayev v. Medtronic, Inc.*, 228 F. Supp. 3d 192, 208 (E.D.N.Y. 2017) (an FDA regulation requiring device makers to document manufacturing procedures did not impose a duty to preserve because Plaintiff made no showing that the regulation "was designed to assist litigation"); *M & T Mortg. Corp. v. Miller*, No. 02-CV-5410, 2007 WL 2403565, at *9 (E.D.N.Y. Aug. 17, 2007) (IRS regulations requiring retention of corporate books and records did not "trigger a presumption of spoliation" when plaintiffs made no showing that the regulations were designed to protect them). Defendants have made no showing that New York's medical record retention regulations were designed to protect the employers of patients (as opposed to the patients themselves). Defendants, therefore, cannot use those regulations to impose an obligation to preserve.

from defense counsel's legal assistant, in which the legal assistant asserts that Stadlen and Stadlen's assistant told her in November 2017 that "the last destruction was six months ago." Sabo Decl. ¶¶ 11–12. Putting aside the obvious hearsay issues here, there is no indication that Stadlen's alleged statement referred specifically to Plaintiff's medical records, as opposed to medical records generally. Stadlen offers his own declaration denying that he or his assistant made the alleged statement to Defendants' legal assistant. *See* Stadlen Decl. ¶ 8. Instead, Stadlen asserts that "the last time [he] destroyed any paper records of any of [his] patients was two to three years ago," *i.e.*, February 2015 to February 2016. *Id.* ¶ 9. This statement, again, does not establish whether Plaintiff's records were part of the alleged document destruction.[12]

In short, Defendants have failed to carry their burden of establishing that Plaintiff's medical records were discarded at a time when Plaintiff could have had any obligation to preserve them. Because Defendants' motion fails on this ground, the Court need not determine whether the records were discarded with a culpable state of mind or whether they would have been relevant to this case.

For all these reasons, Defendants' motion to preclude Plaintiff from relying on evidence from McIntyre and Stadlen is denied. If this case goes to trial, however, the Court will allow Defendants to offer evidence regarding the unavailability of treatment records from McIntyre and Stadlen. If Defendants adduce sufficient evidence to satisfy their burden of proof of showing spoliation, the Court will consider charging the jury that it may draw an adverse inference against Plaintiff based on the missing treatment records.

---

[12] The Court also notes that neither Defendants' nor Stadlen's account of events makes sense in the context of this case. If Defendants are correct that Stadlen keeps records for six years but destroyed records "six months" prior to November 2017 (*i.e.*, in May 2017), then it is unclear why Stadlen only produced records dating back to 2013, as opposed to 2011 (*i.e.*, six years prior to May 2017). On the other hand, if Stadlen is correct that he keeps records for six years but destroyed records "two to three years" prior to February 2018 (*i.e.*, February 2015 to February 2016), then it is unclear why he did not produce Plaintiff's records dating back to 2009 or 2010 (*i.e.*, six years prior to 2015 and 2016).

13

## CONCLUSION

For all the foregoing reasons, Defendants' motion to preclude is DENIED. The Clerk is respectfully directed to close the open motion at Dkt. 77. The Court also enters the following orders:

1. Unless Plaintiff withdraws Khan and Torrado as witnesses, and notifies Defendants and the Court by **May 31, 2018,** of that withdrawal, discovery is reopened for the limited purposes described in this opinion until **June 21, 2018**.

2. The Court will allow Defendants to offer evidence at trial of McIntyre's and Stadlen's alleged discarding of records after April 2015, and, if the evidence is sufficient, the Court will consider charging the jury that it may draw an adverse inference against Plaintiff based on the missing records.

3. The parties must appear for a conference on **June 22, 2018 at 10:00 a.m.** in Courtroom 443, Thurgood Marshall U.S. Courthouse. No later than **June 14, 2018**, the parties must submit a letter stating whether they will require expert discovery and proposing a briefing schedule for a motion for summary judgment.

**SO ORDERED.**

Date: May 24, 2018  
New York, New York

VALERIE CAPRONI  
United States District Judge